IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMES W. SHAMBLIN, )
)
    Plaintiff, )
)
v. )
) Case Number: 3:05-cv-00892-DRH-DGW
SARA REVELLE, )
)
    Respondent )

**REPORT AND RECOMMENDATION**

Pending before the Court is a petition for a writ of habeas corpus filed by petitioner James W. Shamblin, ("Shamblin") (Doc. 1). For the reasons discussed below, the Court **RECOMMENDS** that Shamblin's petition be **DISMISSED as MOOT.**

**FINDINGS OF FACT**

On December 3, 2001, Hawaii state officials arrested Shamblin and took him into state custody. *See* Docs. 18, 19. He remained incarcerated in a Hawaii prison until April 16, 2002, when federal officials took Shamblin into custody in accordance with a writ of *habeas corpus ad prosequendum* issued by the United States District Court for the District of Hawaii (Doc. 18-4). That court indicted Shamblin for two counts of being a felon in possession of a firearm in violation of 18 U.S.C. §922(g)(1) and 924(a)(2), and, with the exception of one day when federal officials released Shamblin back into Hawaii's custody, he remained in federal prison from April 16, 2002, until February 26, 2003 (Docs. 18-3, 18-4). On February 24, 2003, the district court judge sentenced Shamblin to concurrent sentences of fifty-five months imprisonment and five years

1

supervised release. (Doc. 18-3). The court's judgment, however, did not mention Shamblin's state charges or Shamblin's forthcoming state sentence (Doc. 18-3). Three days later, on February 27, 2003, Shamblin was taken back to a Hawaii state prison and, on April 9, 2003, he received an aggregated state sentence of five years, which was to be served concurrently with the already imposed federal sentence (Doc. 18-4).

Although Shamblin had not yet completed his state sentence, at some point[1], state officials turned Shamblin back over to federal authorities for "unknown reasons" (Docs. 18, 18-4). As a result, Shamblin was mistakenly admitted into a federal prison (Doc. 18-4). Shamblin stayed in federal custody again until September 21, 2003, when U.S. Marshalls placed Shamblin back into the custody of Hawaii state officials so that Shamblin could continue serving his state sentence. (Doc. 18-4).

On December 4, 2003, Shamblin was paroled from his Hawaii sentence and taken back into federal custody to *begin* serving his federal sentence at the Federal Correctional Institution in Greenville, Illinois ("FCI Greenville") (Docs. 18, 18-3). Shamblin did not receive any prior custody credit for serving approximately fifteen months in federal prison during the two year time frame he was transferred to and from state and federal prison (Docs. 18, 18-3).

Consequently, on October 4, 2004, Shamblin filed a request for Administrative Remedy with the warden where he was incarcerated and challenged the fact that he did not receive prior federal custody credit (Doc. 18-4). Shamblin argued that the decision to set the start date for his federal sentence as the date he was paroled was incorrect because the district court gave him his federal sentence before Hawaii imposed his state sentence,

---

[1] The record is unclear as to whether Shamblin returned to federal custody on April 25, 2003, or July 29, 2003. *See* Doc. 18-4.

2

and he was incarcerated in federal prison for several months before he was paroled. *Id.* In this same request, Shamblin also asked for a *nunc pro tunc* order that designated the Hawaii Department of Corrections as the facility where Shamblin was to serve his concurrent state and federal sentences (Doc. 18-4).

The warden denied Shamblin's request for administrative remedy, explaining that the state of Hawaii "maintained primary custody" of him, and that his time in federal custody was pursuant to a writ that allowed the "federal court to . . . borrow" him from Hawaii officials (Doc. 18-4). The warden further explained that since the district court's judgment did not explicitly order Shamblin to serve his federal sentence concurrently with the state sentence, Shamblin's federal sentence would run consecutively to his state sentence. (Doc. 18-4).

Shamblin appealed the warden's decision to the regional office of the United States Department of Justice, Federal Bureau of Prisons (the "Bureau") (Doc. 18-4). The Bureau concluded that since Shamblin received prior credit towards his state sentence, it could not lawfully give him prior credit towards his federal sentence.[2] (Doc. 18-4).

The Bureau also considered Shamblin's *nunc pro tunc* designation request. *Id.* It contacted the federal court who imposed Shamblin's sentence and confirmed that it was the judge's intention that Shamblin serve his federal sentence after he served his state sentence (Doc. 18-4). The Bureau consequently denied Shamblin's appeal (Doc. 18-4). Shamblin next appealed the Bureau's decision to the Bureau's central office; however, that appeal was also denied (Doc. 18-4).

---

[2] The Bureau relied on 18 U.S.C. §3585(b) (emphasis in original), which states that a "defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . *that has not been credited against another sentence*."

On October 20, 2005, Shamblin filed the pending petition for a writ of habeas corpus, pursuant to 28 U.S.C. §2241 (Doc. 1). Shamblin essentially contended that his continuous transfer between state and federal custody resulted in an improper federal sentence calculation (Docs. 1, 20). He claimed that both the State of Hawaii and the United States forfeited their jurisdiction over him by releasing him into each other's custody and, his sentences imposed by these two sovereigns should have run concurrently (Doc. 20).

On March 20, 2006, Respondent answered Shamblin's petition (Doc. 18 ). Respondent acknowledged that admitting Shamblin into federal custody before Shamblin had finished serving his state sentence was a mistake. *Id.* It nevertheless argued that Shamblin's federal sentence was properly calculated to run consecutively with his state sentence because Hawaii had primary jurisdiction over Shamblin until his parole, and, Shamblin received prior credit towards his state sentence. *Id.* Accordingly, as the Bureau asserted when it denied Shamblin's appeal, Respondent claimed that under Shamblin's circumstances, federal law precluded Shamblin from receiving prior federal custody credit. *See* 18 U.S.C. §3585(b).

On July 18, 2006, the United States District Court for the District of Hawaii entered an amended judgment that recomputed Shamblin's sentence to begin on February 24, 2003, which was approximately ten months before he was paroled (Doc. 22-2). The amended judgment additionally stated that Shamblin's sentence *would run concurrently with any State prison terms. Id.* (emphasis added). As a result of the district court's amended judgment, Shamblin also received prior federal custody credit against his federal sentence, and the Federal Bureau of Prisons released Shamblin from FCI

4

Greenville on July 31, 2006, to complete the remaining of his sentence on supervised release. *Id.*

Due to the district court's amended judgment, Respondent filed a supplemental response. Respondent now asks the Court to dismiss Shamblin's petition as moot because Shamblin has received the relief he requested in his petition (Doc. 22). Shamblin did not reply to Respondent's supplemental response.

## CONCLUSIONS OF LAW

Any petitioner who files his petition for habeas corpus relief while he is incarcerated is in "custody" within the meaning of the federal habeas corpus statutes. *Spencer v. Kemna,* 523 U.S. 1, 6, 118 S.Ct. 983, 140 L.Ed.2d 43 (1998). This remains true even after an inmate is released. *See Cochran v. Buss,* 381 F.3d 637, 640 (7th Cir. 2004) ("[i]t has long been established that "custody" does not require physical confinement"); *Phifer v. Clark,* 115 F.3d 496, 500 (7th Cir. 1997). Petitioners are therefore in "custody" when they are no longer confined by prison walls but are nevertheless serving a sentence that "involve[s] significant restraints on [their] liberty," such as a person who is on supervised release. *Jones v. Cunningham,* 371 U.S. 236, 239 (1963). *And see United States v. Trotter,* 270 F.3d 1150, 1152 (7th Cir. 2001) (noting "supervised release is a form of custody.") Shamblin was incarcerated at FCI Greenville when he filed his petition, and he still remains on supervised release[3]; therefore, he is "in custody" for the purposes of his habeas petition. *Trotter,* 270 F.3d at 1150; *Spencer,* 523 U.S. at 1.

---

[3] The federal district court's amended judgment ordered Shamblin to serve three years on supervised release; therefore he remains on supervised release until July 31, 2009.

The question before the Court is therefore not whether Shamblin's petition is moot because he is no longer incarcerated, but whether there remains a "case and controversy" this Court can resolve? *See Spencer,* 523 U.S. at 7 (noting "[t]he more substantial question, however, is whether petitioner's subsequent release caused the petition to be moot because it no longer presented a case or controversy under Article III, §2 of the Constitution.") A federal court is not permitted to review moot cases due to the "Article III of the Constitution which limits the exercise of judicial power to live cases or controversies." *A.M. v. Butler,* 360 F.3d 787, 790 (7th Cir. 2004); *Spencer,* 523 U.S. at 7 (noting the "case or controversy requirement subsists through all stages of federal judicial proceedings."). A federal court must therefore "dismiss a case as moot when it cannot give the petitioner any effective relief." *Butler,* 360 F.3d at 790; *see also Handy v. Schwartz,* 2009 WL 35190, *1 (S.D. Ill. Jan. 5, 2009) (noting a case is moot "when the Court can offer no relief because the harm is done and cannot be undone . . . [and] the Court no longer has jurisdiction to hear it."); *see also North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971) (per curiam) (federal courts do not have the power "to decide questions that cannot affect the rights of litigants in the case before them."); *Spencer v. Kemna,* 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998); *D.S.A. v. Circuit Court Branch 1,* 942 F.2d 1143, 1146, n.2 (7th Cir. 1990). Thus, in a habeas corpus context, a petitioner who is released from custody may continue to seek the writ only if the Court can offer relief because there are "collateral consequences – lingering disabilities or burdens" that exist. *D.S.A. v. Circuit Court Branch 1,* 942 F.2d 1143, 1146 (7th Cir. 1990).

Collateral consequences include repercussions such as "the inability to hold public office, vote in state elections and serve as a juror." *Handy v. Schwartz,* 2009 WL 35190, *1 (S.D. Ill. Jan. 5, 2009) (citing *Carafas v. La Vallee,* 391 U.S. 234, 237-38, 88 S.Ct. 1556, 20 L.Ed. 2d 554 (1958). These consequences, however, are presumed to exist only when a petitioner's habeas petition challenges his *conviction. See Spencer,* 523 U.S. at 7-8; *see also Cochran v. Buss,* 381 F.3d 637, 641 (7th Cir. 2004). Courts do not apply this presumption to petitions that challenge "sentence calculations where no collateral consequences are likely." *Handy,* 2009 WL 35190, *1 (S.D. Ill. Jan. 5, 2009); *Weiss v. Indiana Parole Board,* 2007 WL 1302116, **1 (7th Cir. May 3, 2007) (noting "no such presumption exists to sentencing determinations.") In fact, "any challenge to the length of [the petitioner's] sentence becomes moot unless there are collateral consequences that may be redressed in the habeas corpus proceeding." *Morningstar v. Hathaway,* 2008 WL 3461621, *1 (S.D. Ill. Aug. 12, 2008) (citing *Spencer v. Kemna,* 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.E.2d 43 (1998)).

In this case, the Court agrees with Respondent's contention that Shamblin's petition should be dismissed as moot because the district court of Hawaii's amended judgment resolved Shamblin's previous concerns about his federal sentence calculation. Shamblin received prior custody credit, his federal sentencing start date was changed to begin approximately ten months earlier, and the Hawaii district court ordered that his federal sentence run concurrently with that imposed by Hawaii. Since the district court's amended judgment cured the "specific allegations" Shamblin raised, the Court must dismiss his petition. *Phifer v. Clark,* 115 F.3d 496, 500-501(7th Cir. 1997). In addition, Shamblin chose not to reply to Respondent's supplemental response, and thus he did not

point out any collateral consequences to the Court that would keep his petition alive. *See Morningstar v. Hathaway,* 2008 WL 3461621, *1 (S.D. Ill. Aug. 12, 2008) (noting the "petitioner bears the burden of proving that such collateral consequences exist."). *See also Handy,* 2009 WL 35190, *1 (when a petitioner "fails to point out any collateral consequences or disabilities he continues to suffer as a result an alleged improper calculation of his sentence that the Court could remedy, there is no longer a case or controversy, and [the] petition is moot.")

Accordingly, for the foregoing reasons, the Court **RECOMMENDS** that petitioner James W. Shamblin's petition be **DISMISSED as MOOT.**

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have ten (10) days after service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: February 24, 2009**

> s/ *Donald G. Wilkerson*
> **DONALD G. WILKERSON**
> **United States Magistrate Judge**